IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

James P. Perry,						Case No. 3:06CV2541

       Plaintiff,

v.								ORDER

Commissioner of Social Security,

       Defendant.

This is a social security case in which plaintiff James P. Perry seeks judicial review of the defendant Social Security Commissioner's [Commissioner] final decision denying his claims for disability insurance benefits [DIB] under the Social Security Act, 42 U.S.C. §§ 416(i) and 423(d). Jurisdiction is proper under 28 U.S.C. § 1331 and 42 U.S.C. § 405(g).

Perry objects to the Magistrate Judge's Report and Recommendation [Report] recommending that I affirm the Commissioner's decision. [Doc. 21]. For the following reasons, the Report shall be adopted and the Commissioner's decision shall be affirmed.

**Background**

Perry alleges that he suffers from post-traumatic stress disorder and severe major depressive

1

disorder. As a result, he experiences persistent migraines, sharp back and knee pain, and bouts of depression and uncontrollable anger. As a result of the migraines, Perry suffers from nausea and has developed a sensitivity to increased light and sound.

Perry applied to the Social Security Administration for DIB on December 13, 2002 and submitted an application for supplemental security income [SSI] on November 7, 2002, claiming that he had been disabled since February 20, 2001. In his application, he alleged that his health problems made it impossible for him to work. The Commissioner denied Perry's claim initially and again on reconsideration.

Perry then requested a hearing before an Administrative Law Judge [ALJ]. On September 7, 2005, the ALJ presided over a hearing on the matter.

At the hearing, Perry, a medical expert [ME], and a vocational expert [VE] testified. The VE testified that Perry, despite his impairments, can perform seventy percent of light, unskilled work available in the economy. Of the approximately 90,000 available jobs, Perry's abilities qualify him for approximately 63,000. Examples of these jobs include: workers/assemblers, hand packers, and simple inspectors. There are approximately 3,000, 2,000, and 2,800 jobs, respectively, in the aforementioned fields in the region in which Perry lives. The VE, however, when considering a mental status report by Dr. L. Misra, one of Perry's treating physicians, in addition to other psychologist's reports, concluded that Perry could not engage in competitive work activity.

Misra concluded that Perry was psychologically disabled. He based his diagnosis primarily on Perry's self-reported condition, rather than independent diagnostic testing. Perry also presented an unsigned and undated report from Dr. J.T. Spare, his other treating physician. Spare also based

2

his report primarily on Perry's self-described symptoms and did not include in it any evidence of objective medical testing.

The ME testified that Perry should not work with dangerous machinery, lift more than twenty pounds regularly or fifty pounds occasionally, or bend or kneel regularly. Beyond these limitations, the ME testified that no physical evidence of disability existed. The ALJ did not allow the ME to consider Dr. Drake's report which concluded that Perry had organic brain syndrome. The ALJ reasoned that this would be inappropriate as both attorneys had not had the opportunity to view Drake's reports. The ME also refused to discuss Perry's psychiatric diagnosis, noting "I am not a psychiatrist." [Doc. 11, p. 73].

On April 27, 2006, the ALJ found Perry capable of performing a full range of light work, and, thus, not entitled to DIB or SSI. In reaching his conclusion, the ALJ relied on the reports of Dr. William Schonberg, Dr. Bruce Goldsmith and Dr. K.S. Steiger, each of whom, based on their individual observations, testing, and/or review of Perry's medical records, concluded that Perry was not disabled. In comparing them with Misra's and Spare's reports, the ALJ noted that the latter two were "unremarkable" for they merely demonstrated Perry's "anger mostly directed towards his wife." [Doc. 11, p. 17].

The ALJ then listed the specific standards a claimant must meet to merit benefits, noting that the record, including the reports, "did not document the existence of any of these criteria." *Id.* The ALJ did not discuss either report's authenticity. The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Perry's request for appellate review.

Perry sought review in this court on October 20, 2006. Under Local Civil Rule 72.2(b), I referred the case to the Magistrate who issued a Report. The Report, which Perry now objects to, recommends that I affirm the denial of Perry's request for benefits.

## Standard of Review

My review of the portions of the Magistrate's Report to which Perry objects is de novo. 28 U.S.C. § 636(b)(1). In reviewing the Commissioner's decision, however, I only determine whether 1) substantial evidence in the record supports the Commissioner's finding, and 2) the ALJ applied the proper legal standards in reaching his or her decision. 42 U.S.C. § 405(g); *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

I "may not try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citing *Richardson*, *supra,* 402 U.S. at 401); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citing *Myers v. Richardson*, 471 F.2d 1265, 1266 (6th Cir. 1972)). If substantial evidence supports the ALJ's decision, I must accept it, even if I would decide the matter differently in the first instance. 42 U.S.C. § 405(g) (1998); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Brainard*, *supra,* 889 F.2d at 681 (citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). In determining whether substantial evidence in support exists, I view the record as a whole, *Allen v. Califano*, 613 F.2d 139, 145 (6th Cir. 1980), and consider anything in the record suggesting otherwise. *Beavers v. Sec'y of Health Education and Welfare*, 577 F.2d 383, 387 (6th Cir. 1978).

**Discussion**

Perry asserts five challenges to the Magistrate's Report. First, Perry argues that the Magistrate erroneously affirmed the ALJ's discounting of Mirsa's and Spare's reports. Alternatively, Perry argues that the ALJ did not explain why he rejected the reports. Second, Perry argues that the Magistrate incorrectly affirmed the ALJ's rejection of the limitations from Misra's and Spare's reports regarding Perry's capacity for work when posing the hypothetical to the VE. Third, Perry challenges the Magistrate's affirmation of the ALJ's finding that a sufficient number of jobs existed to accommodate Perry despite the VE's testimony regarding Perry's inability to perform competitive work activity. Fourth, Perry argues that the Magistrate erroneously approved the ALJ's use of the Medical-Vocational Guidelines [Grid] as a framework for determining what employment Perry could perform. Finally, fifth, Perry argues that the Magistrate erroneously accepted the ALJ's decision not to seek further clarification regarding available psychological evidence.

### A. The ALJ's Exclusion of Dr. Misra's and Dr. Spare's Testimony

Perry argues that the ALJ erroneously, without explanation, discounted Misra's and Spare's reports.

In assessing the medical evidence presented in a claim's support, the ALJ must follow certain governing standards. The ALJ must give greater deference to the opinions of treating physicians than those of non-treating physicians. Soc. Sec. Rul. 96-2p, 1996 WL 374188; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). The ALJ must accord the treating physician's opinion, as to the nature and severity of a claimant's conditions, controlling weight if it is based on "medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record." *Wilson*, *supra,* 378 F.3d at 544.

When the treating physician's opinion is not controlling, the ALJ, in determining the opinion's weight, must consider: the treatment relationship's length, frequency, nature, and extent; the supportability and consistency of the physician's conclusions; the physician's specialization; and any other relevant factors. *Id.* There, however, remains a rebuttable presumption that the ALJ will give deference to the treating physician's opinion. *See* Soc. Sec. Rul. 96-2p, 1996 WL 374188, *4 ("In many cases, a treating physician's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.").

Additionally, the ALJ must provide "good reasons" for discounting treating physicians' opinions; reasons "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.*, *5. Failure to follow the procedural requirement will constitute a lack of substantial evidence, even where the record justifies the ALJ's conclusion. *Id.*

Perry erroneously assumes that because the ALJ's analysis was brief, it was insufficient. *See Pasco v. Comm'r of Soc. Sec.*, 137 Fed. Appx. 828, 837-38 (6th Cir. 2005) (finding the ALJ's statement "[t]here is nothing objective to support any of these statements and the [ALJ] does not accept them[]" sufficient to meet the explanatory requirement). The ALJ, in dismissing Misra's and Spare's reports, explained that they were unpersuasive because, rather than documenting a psychological disability, they merely showed Perry's anger towards his wife. The ALJ then compared the report's conclusions with the contrary conclusions of three other psychologists. Finally, the ALJ noted that the record, including the reports, did not prove any of the factors required to prove disability. Accordingly, the ALJ provided sufficient explanation for his decision to discount the reports.

Nor do Perry's arguments convince me that the ALJ erroneously discounted the reports. As Misra and Spare based their reports primarily on Perry's self-reported conditions as opposed to medical examinations, I conclude that medically acceptable clinical and laboratory diagnostic techniques did not support their reports. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003) ("If the treating physician's opinion is not supported by objective medical evidence, the ALJ is entitled to discredit the opinion as long as [she] sets forth a reasoned basis for her rejection.").

### B. The Limitations Excluded From the Hypothetical Posed to the VE

.       Perry asserts that the ALJ erroneously rejected the limitations from Misra's and Spare's reports regarding Perry's capacity for work when posing the hypothetical to the VE.

In fashioning hypothetical questions to pose to the VE, the ALJ must incorporate only those limitations he or she finds credible. *Booms v. Comm'r of Soc. Sec.*, 277 F. Supp.2d 739, 745 (E.D. Mich. 2003) (citing *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993)). "An ALJ is not required to accept a claimants's subjective complaints and may properly consider a claimant's credibility when making a determination of disability," and can present a hypothetical based on his or her own assessment if she reasonably finds the claimant's testimony to be inaccurate. *Id.* (citing *Jones*, *supra,* 336 F.3d at 476).

Perry admits that while the ALJ could have dismissed Perry's subjective complaints, he argues that the ALJ could not have dismissed treating physicians' vocational limitations. Perry's argument overlooks the fact that Spare and Misra based their reports on Perry's subjective complaints. Accordingly, the ALJ properly excluded their limitations from the hypothetical he posed to the VE.

### C. The VE's Testimony Regarding Perry's Ability
### to Engage in Competitive Work Activity

Perry challenges the ALJ's finding that a significant number of jobs existed to accommodate him despite the VE's testimony regarding Perry's inability to perform competitive work activity.

To determine disability, the ALJ engages in a sequential, five-step evaluative process. 20 C.F.R. § 404.1520 (1999). The ALJ considers: 1) whether claimant is working and whether that work constitutes substantial gainful activity; 2) whether claimant is severely impaired; 3) whether claimant's impairment meets or equals the durational requirements listed in Appendix 1 of Subpart P, Regulations No. 4; 4) whether claimant can perform past relevant work; and 5) whether other jobs exist in significant numbers to accommodate claimant if claimant cannot perform his or her past relevant work, given his or her residual functional capacity [RFC], age, education and past work experience. 20 C.F.R. § 404.1520 (1999).

The claimant bears the burden of proof at steps one through four, after which the burden shifts to the Commissioner at step five. At step five, the ALJ evaluates the claimant's RFC to perform a particular category of work (i.e., sedentary, light, medium, heavy or very heavy work), and determines, using the regulatory guidelines, whether an individual of the claimant's age, education and work experience could engage in substantial gainful activity. 20 C.F.R. Pt. 404, Subpart P, App. 2 (1999).

Perry's argument overlooks the fact that the VE based his testimony regarding Perry's alleged inability to engage in competitive work activities on Spare's incomplete report. As I discussed above and as the ALJ and the Magistrate noted, Spare based his report primarily on Perry's self-observations. As the Magistrate noted, Perry's feelings towards his wife, rather than legally cognizable disability, caused much of the anger Spare's report documented. When the ALJ

asked the VE about Perry's ability to work in exclusion of the aforementioned reports, he concluded that Perry could perform most light work and almost all sedentary work. Accordingly, substantial evidence supported the Magistrate's conclusion that Perry could seek gainful employment and, thus, was not disabled.

### D. The ALJ's Use of the Grid as Guidelines

An ALJ uses the "Grid" during the final step. *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). "After the ALJ determines that the plaintiff is incapable of performing past relevant work, he or she uses them to determine whether plaintiff can perform other jobs in the national economy." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001).

Where a claimant has nonexertional impairments, the ALJ must use the Grid as only a framework for the decision and must rely on other evidence to show that a significant number of jobs exist in the national economy that a claimant can perform. 20 C.F.R. § 404.1567 (1999); *Burton v. Sec'y of Health & Human Servs.*, 893 F.2d 821, 822 (6th Cir. 1990).[1]

Contrary to Perry's argument, the ALJ properly used the Grid. The ALJ began by noting that the Grid directed a finding of not disabled for a person of Perry's age with a similar skill set. The ALJ, however, based his decision on the testimony of the vocational expert who explained that Perry is capable of performing over seventy percent of the 63,000 light jobs available regionally. Accordingly, I find no error with the ALJ's application of the Grids.

---

[1] Perry argues that an ALJ may not use the Grid, in any capacity, when assessing the capabilities of a claimant who has asserted a nonexertional limitation. In support, he cites to *Cole v. Sec'y of Health & Human Servs.*, 820 F.2d 768,772 (6th Cir. 1987). Both of the cases which *Cole* cites for this proposition and all relevant cases after *Cole* affirm that the ALJ may use the Grid as a guideline. *Heston*, *supra,* 245 F.3d 528, 537-38; *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146,150 (6th Cir. 1996); *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 528 (6th Cir. 1991); *Damron v. Sec'y of Health & Human Servs.*, 778 F.2d 279, 282 (6th Cir. 1985).

**E. The ALJ's Decision Not to Seek Further Clarification**

Perry argues that the ALJ violated a duty to seek further clarification in two respects. First, Perry argues that the ALJ should have allowed the ME to testify as to Perry's psychological condition considering the allegedly sparse psychological evidence in the record. Perry also argues that the ALJ should have sought further clarification concerning Spare's report's authorship.

Soc. Sec. Rul. 85-16, 1985 WL 56855, requires that:

> When medical source notes appear to be incomplete, recontact with the source should be made to attempt to obtain more detailed information. Every reasonable effort should be made to obtain all medical evidence from the treating source necessary to make a determination of impairment severity and RFC before obtaining evidence from any other source on a consultative basis . . . Similarly, when the reports from these sources appear to be incomplete, the source should be re-contacted to clarify the issues.

Contrary to Perry's assertions, ample psychological evidence in the record supports the ALJ's conclusion. The ALJ considered and discussed Schonberg's, Goldsmith's and Steiger's reports, each of which concluded that Perry was not disabled. While further investigation may have revealed that Drake based his report on well-founded examinations and, thus, the ALJ should have allowed testimony based on it, the three reports concluding that he was not disabled constituted sufficiently substantial evidence.[2]

As to Perry's second argument, while the ALJ noted during the hearing that Spare's report was unsigned and undated, that the report lacked these items did not cause the ALJ to discount the report. Rather, as noted above, the ALJ based his decision on the report's content. Accordingly,

---

[2] Perry argues that the record so lacked psychological evidence that the ME was reluctant to address Perry's psychiatric diagnoses. Contrary to Perry's assertions, this was not because of a lack of evidence in the record, but because, as he noted, he was not a psychiatrist.

considering that the ALJ would have reached the same result if Spare had signed and dated the report, the ALJ's decision to not inquire into this matter further was not erroneous.

## Conclusion

For the foregoing reasons, it is hereby:

ORDERED THAT plaintiff James P. Perry's appeal of the Magistrate's decision affirming the ALJ's denial of benefits to him be, and the same hereby is overruled.

The Clerk shall enter judgment accordingly.

So ordered.

s/James G. Carr
James G. Carr
Chief Judge

11